UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DAVID MARABLE,** | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | }  Case No.: 2:20-cv-00725-MHH |
| | } |
| **MARK PETTWAY,** *in his Official Capacity as Sheriff of Jefferson County, Alabama*, | } |
| | } |
| Defendant. | } |

## MEMORANDUM OPINION AND ORDER

In this lawsuit, Deputy Sheriff David Marable asserts employment discrimination claims against Sheriff Mark Pettway in his official capacity as Sheriff of Jefferson County, Alabama. Deputy Marable alleges that Sheriff Pettway intentionally discriminated against him either because he is Black or because he is male, or for both reasons. Sheriff Pettway has asked the Court to enter judgment in his favor on Deputy Marable's discrimination claims. (Doc. 34).

To examine Sheriff Pettway's summary judgment motion, the Court first summarizes the standard for summary judgment motions under Rule 56 of the Federal Rules of Civil Procedure. Then, applying that standard, the Court describes the evidence in the light most favorable to Deputy Marable. Finally, the Court

evaluates the evidence under the laws that govern Deputy Marable's discrimination claims to determine whether the record contains disputed questions of fact for a jury to resolve.

## I.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To demonstrate a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When considering a summary judgment motion, a district court must view the evidence in the record and draw reasonable inferences from the evidence in the light most favorable to the non-moving party. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). Because Sheriff Pettway moved for summary

judgment, the Court views the evidence in the light most favorable to Deputy Marable in this opinion.

## II.

In May 2019, Mr. Marable sought an inter-department transfer from the Birmingham Police Department to the Jefferson County Sheriff's Office. (Doc. 34-1, p. 12; Doc. 34-2, p. 15). Mr. Marable was a lieutenant with the BPD, and he asked Sheriff Pettway if he could transfer to the JCSO as a lieutenant. (Doc. 34-2, p. 31, tp. 29). Sheriff Pettway did not answer the question, but Colonel Herman Webb told Mr. Marable that "people are not allowed to come over with rank." (Doc. 34-2, pp. 31–33). In the section of the transfer application form that Mr. Marable completed, he indicated that he would move from a BPD lieutenant position, grade 24, with a $40 hourly wage to a JCSO deputy sheriff position, grade 17, with a $27 hourly wage. (Doc. 34-1, p. 12). Mr. Marable also completed and signed a request for demotion form that contained the same information. The Jefferson County Personnel Board approved Mr. Marable's request for demotion. (Doc. 34-1, p. 14).

In June of 2019, Sheriff Pettway notified Mr. Marable that the JCSO had accepted his transfer with the start date and pay grade that he requested. (Doc. 34-1, pp. 10, 12). According to Sheriff Pettway, when he approved Mr. Marable's transfer, he "was only seeking to fill a deputy position in the Corrections Division."

(Doc. 34-1, p. 4, ¶ 8). Shortly after Sheriff Pettway approved Mr. Marable's transfer from BPD to JCSO, Sheriff Pettway approved a similar transfer and demotion for a white officer who moved from a sergeant position in the Vestavia Police Department to a deputy position in the JCSO. (Doc. 34-1, pp. 4–5, ¶ 9).

Before Mr. Marable transferred to the JCSO, Sheriff Pettway hired Heath Boackle, a white male, as a supervisory sergeant in the Corrections Division. (Doc. 34-1, p. 3, ¶ 5; Doc. 34-1, p. 8). Before joining the JCSO, Sergeant Boackle had retired from the BPD as a sergeant in the K-9 Unit in Tactical Division. (Doc. 34-1, p. 3, ¶ 5). In September 2019, Sheriff Pettway appointed NaShonda Howard, a Black female, to serve as Commander of the JCSO Internal Affairs Division. (Doc. 34-1, p. 5, ¶ 11; Doc. 34-1, p. 28). Before joining the JCSO, Captain Howard had retired from the BPD as a captain in the Special Victims Unit in the Investigation Division. (Doc. 34-1, p. 5, ¶ 11). In November 2019, Sheriff Pettway appointed Corey Hardiman, a white male, to serve as Commander of the JCSO Criminal Division. (Doc. 34-1, p. 5, ¶ 11; Doc. 34-1, p. 30). Before joining the JCSO, Captain Hardiman had retired from the BPD as a captain in the Crimes Against Persons Investigation Division. (Doc. 34-1, p. 5, ¶ 11).

As a JCSO deputy sheriff, Mr. Marable received assignments at different duty stations at the Birmingham Jail. He also received special assignments in the juvenile

detention center, the court, and internal affairs. (Doc. 34-2, pp. 24–31).[1] The jail has ten levels and houses male and female inmates. (Doc. 34-3, p. 3, ¶ 5). Male inmates occupy levels 2–4 and 6–9 and are grouped by alleged offense into several categories including "non-violent, violent, isolation, juvenile, infirmary, and mentally ill." (Doc. 34-3, p. 3, ¶ 5). Female inmates also are grouped based on these categories, but the JSCO houses all female inmates on the fifth level of the jail. (Doc. 34-3, p. 3, ¶¶ 5–6).

JCSO sergeants assign work at the jail to deputy sheriffs each day based on the needs of the jail. (Doc. 34-3, p. 3, ¶ 5). According to Captain James Reach, Commander of the Birmingham Jail, "[t]he inmate floor assignments change daily depending on what deputies are scheduled to work that day." (Doc. 34-3, p. 3, ¶ 5; *see also* Doc. 34-1, pp. 25–27). By policy, the JCSO assigns only female deputies to the fifth level to protect "both the privacy interests of the female inmates and the male personnel from allegations of sexual harassment or inappropriate conduct." (Doc. 34-3, p. 4, ¶7). Captain Reach attests that deputies' responsibilities and compensation remain "consistent regardless of what inmate floor they are assigned, and regardless of whether the deputy is overseeing non-violent or violent inmates." (Doc. 34-3, p. 5, ¶ 5). Deputy Marable was assigned to work the floors housing

---

[1] The JCSO oversees the Birmingham Jail which houses detainees while they await trial or transfer to the States of Alabama's Department of Corrections. (Doc. 34-3, p. 2, ¶ 3).

violent male inmates "almost every day," whereas "white deputies . . . virtually never work[ed] upstairs." (Doc. 34-2, p. 38).[2]

### III.

Deputy Marable asserts claims for racial discrimination under Title VII and 42 U.S.C. § 1981 and a claim for gender discrimination under Title VII. (Doc. 1, pp. 6, 8).[3] The Court addresses Deputy Marable's § 1981 claims first and then turns to his Title VII claims.

### *Section 1981 Claims*

Sheriff Pettway contends that Deputy Marable cannot succeed on his § 1981 claims because § 1983 is the exclusive vehicle for § 1981 race discrimination claims against state actors. (Doc. 35, p. 18). Deputy Marable argues that the liberal pleading standard under Federal Rule of Civil Procedure 8 makes room for his

---

[2] In his complaint, Mr. Marable alleges that "Deputy Lane Huffstutler, a Caucasian male, and African American female [d]eputies only work the lower floors of the jail that do[] not house violent offenders." (Doc. 1, p. 5, ¶ 26). According to Captain Reach, between September 1, 2019 and January 1, 2020—the period in which Deputy Marable complains of discriminatory work assignments—Deputy Marable "was assigned to either Levels 7, 8 or 9 approximately 19 times," while Deputy Huffstutler "was assigned to either Levels 7, 8 or 9 approximately 25 times." (Doc. 34-3, p. 4, ¶ 9, *see also* Doc. 34-3, pp. 7–48).

[3] In his complaint, Deputy Marable also asserts his gender discrimination claim under §1981. (Doc. 1, p. 8). Because §1981 governs only race discrimination, the statute does not provide a cause of action to Deputy Marable for gender discrimination. *See, e.g.*, *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960–61 (11th Cir. 1997); *Anjelino v. New York Times Co.*, 200 F.3d 73, 98 (3d Cir. 1999) ("[C]ourts have concluded that sex-based claims are not cognizable under 42 U.S.C. § 1981."); *Bobo v. ITT, Cont'l Baking Co.*, 662 F.2d 340, 343–45 (5th Cir. 1981) (explaining that "sex discrimination is not cognizable" under § 1981).

"failure to simply cite 42 U.S.C. § 1983" in his complaint in tandem with his § 1981 allegations. (Doc. 37, pp. 7–8).

Section 1981 prohibits intentional discrimination based on race in the employment context. 42 U.S.C. § 1981(a); *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472 (11th Cir. 1999). In *Butts v. County of Volusia*, the Eleventh Circuit explained that while "§ 1981 protects against racial discrimination by private and state actors," it "does not itself create a remedy for that violation." 222 F.3d 891, 894 (11th Cir. 2000). Rather, "§ 1983 constitutes the exclusive remedy against state actors for violations of the rights contained in § 1981." *Butts*, 222 F.3d at 892 (citing *Jett v. Dallas Indep. School Dist*, 491 U.S. 701, 731–32 (1989)). Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983.

The Court does not dwell on the procedural flaw in Deputy Marable's complaint because the omission is easy to remedy and because Deputy Marable's claim under § 1983/§ 1981 fails for the same reason that his Title VII claim fails. *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009) (explaining that "discrimination claims, including hostile work environment claims, brought under the Equal Protection Clause, 42 U.S.C. § 1981, or Title VII of the Civil Rights Act

of 1964, 42 U.S.C. § 2000e–2, are subject to the same standards of proof and employ the same analytical framework"); *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (same).[4]

---

[4] In his reply brief, Sheriff Pettway raised the affirmative defense of immunity; he did not mention immunity in his initial brief in support of his motion for summary judgment. (Doc. 36; Doc. 38, p. 9). "The Eleventh Amendment provides sovereign immunity to the states to protect them from suit in federal court without their consent," and such "immunity has also been extended to state officials, acting in their official capacity, where an agency or individual may be treated as an arm of the State partaking of the Eleventh Amendment Immunity." *Melton v. Abston*, 841 F.3d 1207, 1233 (11th Cir. 2016) (cleaned up). Accordingly, "[a] state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity or Congress has abrogated the state's immunity." *Melton*, 841 F.3d at 1233.

Congress has abrogated states' sovereign immunity from Title VII claims. *See In re Emp. Discrimination Litig. Against State of Ala.*, 198 F.3d 1305, 1317 (11th Cir. 1999) ("[W]e have no hesitation in concluding that Congress unequivocally expressed its intent to abrogate the states' Eleventh Amendment immunity when it amended Title VII to cover state and local governments."). Congress "has not abrogated Alabama's immunity and Alabama has not waived its Eleventh Amendment immunity" from Section 1983 claims, *Melton*, 841 F.3d at 1234, or from Section 1981 claims, *see Henry v. Fla. Bar*, 701 Fed. Appx. 878, 880 (11th Cir. 2017) (citing *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. 1981)). Accordingly, "Alabama state officials are immune from [Sections 1981 and 1983] claims brought against them in their official capacities," *Melton*, 841 F.3d at 1234; *see also Henry*, 701 Fed. Appx, at 880; *Sessions*, 648 F.2d at 1069. The Eleventh Circuit has held that "[i]t is well established in this Circuit that Alabama sheriffs and their deputies are state officials and are absolutely immune from suit as an officer of the state under the Eleventh Amendment," *Melton*, 841 F.3d at 1234.

The Court cannot enter judgment in favor of Sheriff Pettway based on his defense of immunity because he did not raise the defense in his opening brief. *See, e.g., S. Dental Birmingham LLC v. Cincinnati Ins. Co.*, 527 F. Supp. 3d 1341, 1348 (N.D. Ala. 2021) (explaining that district courts ordinarily do not consider arguments made for the first time in a reply brief); *Trondheim Cap. Partners, LP v. Life Ins. Co. of Ala.*, 505 F. Supp. 3d 1213, 1224 (N.D. Ala. 2020) (same); *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'" (citation omitted)); *United States v. Whitesell,* 314 F.3d 1251, 1256 (11th Cir. 2002) (Court need not address issue raised for first time in reply brief); *United States v. Dicter,* 198 F.3d 1284, 1289 (11th Cir. 1999) (issue raised for first time in reply brief waived); *United States v. Martinez,* 83 F.3d 371, 377 n.6 (11th Cir. 1996) (declining to consider arguments raised for the first time in a reply brief).

### *Title VII Claims*

Title VII prohibits an employer from discriminating against an employee based on race or sex or other protected categories. 42 U.S.C. § 2000e-2(a)(1). To survive a motion for summary judgment on an intentional discrimination claim, a plaintiff must present sufficient evidence to create a triable issue concerning the employer's discriminatory intent. *Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).

When the plaintiff relies on circumstantial evidence to establish discriminatory intent, he may use the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Phillips v. Legacy Cabinets*, 87 F.4th 1313, 1321 (11th Cir. 2023). Under the *McDonnell Douglas* framework, a plaintiff's *prima facie* case creates a presumption of unlawful discrimination. *Phillips*, 87 F.4th at 1321. If the employee meets his initial burden and creates this presumption, then "the burden shifts to the employer to provide a legitimate, non-discriminatory reason for its actions." *Phillips*, 87 F.4th at 1321. "[T]o satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had *not* been motivated by discriminatory animus." *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 257 (1981). If the employer meets its burden, then the burden returns to

9

the employee to "show that the employer's stated reason was merely pretext for unlawful discrimination." *Phillips*, 87 F.4th at 1321.

Deputy Marable's Title VII claims (and his § 1981/1983 race discrimination claim) fail under the *McDonnell Douglas* framework and under any view of the evidence. In opposition to Sheriff Pettway's motion for summary judgment, Deputy Marable argues only that he has established a *prima facie* case as to his race and sex discrimination claims. (Doc. 37, pp. 4–9). Assuming for purposes of this opinion that he established a *prima facie* of discrimination, Deputy Marable cannot stop there because in his summary judgment brief, Sheriff Pettway asserted a non-discriminatory reason for his placement of Deputy Marable in a non-supervisory position at the jail. Sheriff Pettway asserted that he hired Deputy Marable to fill a non-supervisory position in the Corrections Division of the JCSO. (Doc. 35, pp. 10–11). In his affidavit, Sheriff Pettway asserted that when he hired Mr. Marable in May 2019, the JCSO "was only seeking to fill a deputy position in the Corrections Division." (Doc. 34-1, p. 4, ¶ 8). Thus, Sheriff Pettway met his intermediate burden.

In his opposition brief, Deputy Marable did not respond to Sheriff Pettway's contention that he (Deputy Marable) could "offer no evidence that [Sheriff] Pettway's explanation is a mere pretext for discrimination." (Doc. 35, p. 11). As the Eleventh Circuit recently explained in *Tynes v. Florida Department of Juvenile*

10

*Justice*, "[w]here the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is *no longer relevant*." 88 F.4th 939, 945 (11th Cir. 2023) (internal marks omitted; italics in *Tynes*). "[W]hen the defendant employer offers evidence of the reason for its actions toward the plaintiff, the presumption of discrimination created by the prima facie case simply drops out of the picture." *Tynes*, 88 F.4th 939 at 945. "[T]he ultimate question in a discrimination case is whether there is enough evidence to show that the reason for an adverse employment action was illegal discrimination. The prima facie case in the *McDonnell Douglas* framework can help answer that question—but it cannot replace it." *Tynes*, 88 F.4th at 941–42. In an employment discrimination case, a district court must focus on whether the employee "put forward enough evidence to show that" he suffered an adverse employment action "because of racial [or sex] discrimination." *Tynes*, 88 F.4th at 942.

Deputy Marable cannot carry his burden simply by showing that at other times, when Sheriff Pettway hired officers from other agencies to fill other open positions at JCSO, Sheriff Pettway hired white males or females, and those transfer employees did not lose rank. Deputy Marable must show that when Sheriff Pettway approved his transfer from BPD to JCSO, Sheriff Pettway required him to accept a demotion because of his race or because he is male. Stated differently, Deputy Marable must demonstrate that were it not for his race and/or his gender, Sheriff

11

Deputy would have hired him to work in the jail in an entry-level deputy position and allowed him to maintain his BPD rank of lieutenant at grade 24 with a $40 hourly wage. Deputy Marable has put forward no such evidence. *Tynes*, 88 F.4th at 942.[5]

Deputy Marable's allegations regarding his specific job assignments are even more problematic. Mr. Marable asserts that he is the only Black male deputy who "is required by the JCSO to oversee the floors of the [Birmingham jail] that house violent offenders" and that white male deputies and Black female deputies "only work the lower floors of the jail that do[] not house violent offenders." (Doc. 1, pp. 5, ¶¶ 25–26). Mr. Marable has not shown that his assignment to the floors housing male violent offenders constitutes an adverse employment action. "[A]dverse employment actions include 'tangible employment actions,' which are those actions 'that affect continued employment or pay—things like terminations, demotions, suspensions without pay, and pay raises or cuts—as well as other things that are similarly significant standing alone.'" *Davis v. Legal Servs. Ala., Inc.*, 19 F.4th 1261, 1266 (11th Cir. 2021) (quoting *Monaghan v. Worldpay US, Inc.*, 955 F.3d

---

[5] Deputy Marable has not identified evidence that contradicts Sheriff Pettway's assertion that the only job available when Deputy Marable requested a transfer was a deputy position in the Corrections Division. And Deputy Pettway has not identified evidence of "suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred" or "'systematically better treatment of similarly situated employees.'" *Jenkins v. Nell*, 26 F.4th 1243, 1250 (11th Cir. 2022) (quoting *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019)) (*Lewis II*)). As Sheriff Pettway stated in his summary judgment brief, Deputy Marable did not "identif[y] a single person who was 'given' a supervisory title, notwithstanding the fact that the person—like [Deputy] Marable—was hired to fill a non-supervisory role." (Doc. 35, p. 9).

855, 860 (11th Cir. 2020)). Captain Reach has explained that deputies' responsibilities and compensation remain "consistent regardless of what inmate floor they are assigned, and regardless of whether the deputy is overseeing non-violent or violent inmates." (Doc. 34-3, p. 5, ¶ 5). Deputy Marable has not offered evidence to contradict Captain Reach's assertion. Without evidence of some tangible disadvantage that is "so substantial and material" as to constitute an adverse employment action when he is assigned to floors of the jail that house violent offenders, Deputy Marable cannot present his employment discrimination claim to a jury. *Davis v. Town of Lake Park*, 245 F.3d 1232, 1244–45 (11th Cir. 2001); *see Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1203–04 (11th Cir. 2013) (quoting *Davis*, 245 F.3d at 1244–45) (explaining "[w]ork assignment claims strike at the very heart of an employer's business judgment and expertise" and "Title VII is not designed to make federal courts sit as a super-personnel department that reexamines an entity's business decisions").

In short, Deputy Marable has not provided evidence from which a jury reasonably could infer that Sheriff Pettway discriminated against him based on his race and/or gender either when Sheriff Pettway approved his request for a transfer from BPD to the JCSO or when supervising deputies who reported to Sheriff Pettway assigned Mr. Marable to work on floors at the Birmingham Jail that housed violent offenders.

## IV.

For the reasons discussed above, the Court grants Sheriff Pettway's motion for summary judgment. (Doc. 34). The Court will issue a separate final judgment consistent with this opinion.

**DONE** and **ORDERED** this March 28, 2024.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE